(No. 6269.  June 25, 1936.)

PEARL B. ROBINSON, Trading and Doing Business Under the Firm Name and Style of REVIEW PUBLISHING COMPANY, Appellant, v. LATAH COUNTY, IDAHO, Respondent; GEORGE N. LAMPHERE and LOUIS A. BOAS, Copartners Doing Business Under the Trade Name and Style of MOSCOW PUBLISHING COMPANY, Interveners and Respondents.

[59 Pac. (2d) 19.]

A. L. Morgan, for Appellant.

Murray Estes, for Respondent Latah County, and Orland & Goff, for Interveners and Respondents.

HOLDEN, J.—For many years prior to the year 1935, the Moscow Publishing Company printed at Moscow, Latah County, Idaho, a publication called the Daily Star-Mirror, as well as a publication called the Idaho Post. The first named publication was printed daily, and the second, weekly. In January, 1935, the name of the Idaho Post was changed to the Weekly Star-Mirror. From about June, 1933, to on or about December 8, 1933, the Review Publishing Company printed the Moscow Review at Moscow, Idaho. For some years prior to, and in December, 1933, a paper called the Troy Weekly News was printed and published at Troy in Latah County. On or about December 8, 1933, the Review Publishing Company purchased the good-will, subscription list and name of the Troy Weekly News, and combined the two publications under the name of News-Review. From the date the two publications were so combined the News-Review was published at Moscow.

At a regular meeting of the Board of County Commissioners of Latah County, held in January, 1935, the Weekly

Star-Mirror and the News-Review each made application to print and publish the proceedings of the Board of County Commissioners of Latah County, and each newspaper supported its application with a statement of its circulation. The News-Review is published by Pearl B. Robinson, trading under the firm name and style of Review Publishing Company, and the Weekly Star-Mirror and Daily Star-Mirror are published by George N. Lamphere and Louis A. Boas, doing business under the trade name and style of the Moscow Publishing Company.

February 25, 1935, the Board of County Commissioners of Latah County entered the following order:

"The purpose of the meeting of the Board of County Commissioners at this time being for the designation of an official paper for Latah County, two papers having made application, namely, the Weekly Star Mirror and the Moscow News Review, the question was put to a vote of the Board, which was as follows:

> For the Weekly Star Mirror:
> Walter Driscoll   —Yes,
> James H. Blane   —Yes,
> Rudolph E. Nordby—No.

The majority of the Board being in favor of the Weekly Star Mirror as the official paper of the county, and taking into consideration the following:

" 'AGREEMENT TO PUBLISH COMMISSIONERS' PROCEEDINGS AND OTHER LEGAL PRINTING IN DAILY AND WEEKLY EDITIONS OF STAR MIRROR.

" 'In consideration of the awarding to the undersigned of the publication and printing of the County Commissioners' proceedings and other matters required to be published in a newspaper at the legal rate prescribed by statute, the undersigned hereby agrees to publish all such matters in the entire Friday issue of the Star-Mirror, including both the daily for Friday of each week, and the regular Friday weekly edition of the Star Mirror at no additional cost and for the same price.

" 'Dated, this 25th day of February, 1935.

" 'MOSCOW PUBLISHING COMPANY,

" 'By LOUIS A. BOAS.'

"IT IS HEREBY ORDERED that the Weekly Star Mirror be designated the official paper of the county until the further order of the Board.

"BOARD OF COUNTY COMMISSIONERS,

"By JAMES H. BLANE,

"By WALTER DRISCOLL,

"County Commissioners."

March 14, 1935, Pearl B. Robinson appealed to the District Court for Latah County from the said order of said Board. Thereafter, to wit, March 27, 1935, George N. Lamphere and Louis A. Boas made an application in the District Court of said county for leave to intervene. April 9, 1935, the District Court entered an order granting said application and permitting Lamphere and Boas to intervene, and on the same day the controversy was tried. May 25, 1935, the District Court entered an order dismissing the appeal of Pearl B. Robinson from the said order of the Board, from which order of dismissal Pearl B. Robinson appealed to this court.

Two questions are presented on this appeal which appear to be decisive. (1) Are the Weekly Star-Mirror and the Daily Star-Mirror one and the same newspaper, or two separate newspapers? (2) Can the circulation of both be combined under section 30–725, I. C. A.?

Entering upon a discussion of the first question, we turn to section 58–106, chapter 1, title 58, I. C. A., where we find that "No legal notice, advertisement or *publication of any kind required or provided by the laws of the state of Idaho, to be published in a newspaper, shall be published or have any force or effect, as such*" (which terms are sufficiently broad to include the publication of proceedings of Boards of County Commissioners), "unless the same be published in a *newspaper* .... (if a newspaper is published in the county) which said newspaper, if *published weekly*, has been .... published in said county during a period of 78 consecutive weeks prior to the first publication

. . . . and, if *published daily,* has been so published as a *daily paper* . . . . during a period of twelve consecutive months prior to the first publication . . . . '' (emphasis mine), from which it appears that the statute requires that a publication, if published weekly, must be published for a year and a half before it becomes a *newspaper,* qualified, within the meaning of the statute, to publish commissioners' proceedings, legal notices, advertisements, etc.; while, on the other hand, a publication, if published daily, need be published for only twelve consecutive months to become a *newspaper,* qualified, within the meaning of the statute, to publish commissioners' proceedings, legal notices, advertisements, etc. Thus, the legislature, for the purpose of the publication of proceedings of Boards of County Commissioners, as well as for the publication of all kinds of legal notices and advertisements, etc., clearly divided the news publications of the state into *weekly* and *daily newspapers,* and made substantially different requirements as to each.

That the legislature intended to, and did, so classify the news publications of the state, for the purpose of the publication of commissioners' proceedings, legal notices, and advertisements, etc., unmistakably appears from an amendment (sec. 58–107, 1933 S. L., p. 233) to chapter 1, title 58, *supra.* Section 58–107, *supra,* reads as follows:

''A newspaper published within the State of Idaho for six consecutive days a week, excepting legal holidays, is hereby declared to be a daily newspaper within the meaning of Section 58–106 of Chapter 1 of Article 58 of the Idaho Code Annotated.''

It will be noted, the legislature expressly declares that a news publication, published within the state for six consecutive days a week, is a *daily newspaper.*

By another amendment (section 58–108, 1933 S. L., p. 233) to said chapter 1, *supra,* it is provided that a *daily* newspaper as *defined* in section 58–107, *supra,* may designate a *particular day* of the *week* as the *day* on which legal notices, required by law to be published *weekly,* will be published, and that all notices published in the *issue* of said *newspaper* under said date shall be deemed to have been

published *once a week* in a *weekly newspaper*, it being further provided that a publisher of a daily newspaper, in each issue thereof, shall announce at the head of the editorial column the *day* of the *week* on which legal notices will be published.

The Daily Star-Mirror complied with the requirements of section 58–108, *supra*, and each day announced at the head of its editorial column that it would publish legal notices on Friday, in consequence of which, that publication, under the statute (having been published six consecutive days a week for the statutory period, and having accepted the provisions of the statute), became and is a *newspaper* within the terms of the statute, and, as such, fully qualified to publish commissioners' proceedings, legal notices, etc., and, too, the Weekly Star-Mirror, having been published once a week for the statutory period, was, and is, and necessarily must be, a *weekly newspaper*, and, as such *weekly newspaper*, also qualified to publish commissioners' proceedings, legal notices, etc. The requirements which make the news publication of the Moscow Publishing Company, called the Daily Star-Mirror, a *newspaper* within the terms of the statute, are, that it be published six consecutive days a week, except holidays, for twelve consecutive months, and that it comply with the statute, as above stated. If what is called the Daily Star-Mirror had not been published six consecutive days a week, except holidays, for twelve consecutive months, and if it had not accepted the terms of the statute, it would not be a *newspaper* within the meaning of the statute, and, under those circumstances, would not be qualified to publish commissioners' proceedings.

To illustrate: Under the statute, a daily publication must be printed six consecutive days a week, except holidays, for twelve consecutive months, and announce at the head of the editorial column, in each issue, the day of the week on which legal notices will be published, before it becomes qualified to publish commissioners' proceedings, etc., and, under the statute, there can be no doubt but that a publication which has been printed weekly for 78 consecutive weeks is also qualified to publish commissioners' proceedings, nor can it

be doubted that such weekly publication thereby becomes a *newspaper* within the meaning of the statute. Suppose, then, that the publisher of such a weekly commences the publication of a daily, and continues to publish it six consecutive days a week, except holidays, for twelve consecutive months, and then makes the statutory announcement in each issue, at the head of the editorial column. Until the statute is so satisfied, the publication, although printed daily, would not be a *newspaper* within the terms of the statute, but the moment that the statute is satisfied, the daily (which, before, was a mere daily publication, without any legal standing under the statute) becomes a full-fledged *newspaper*, as fully entitled to publish commissioners' proceedings, etc., as any weekly newspaper which also has satisfied the requirements of the statute.

To further illustrate: Suppose that "A" commences to print a daily and a weekly at the same time; that he prints the daily six consecutive days a week, except holidays, for twelve consecutive months, and then accepts the provisions of the statute, by announcing at the head of the editorial column, in each issue, the day of the week on which legal notices will be published. "A" then has *one newspaper* within the meaning of, and as defined and declared by, the statute. Nevertheless, he continues the weekly publication until it has been printed for the full period required by statute. If arithmetic is still a science of numbers and the art of reaching correct results by their use, one and one make two, and "A" must then have *two newspapers,* within the meaning of, and as defined and declared by, the statute, either (or both) of which would be qualified to publish commissioners' proceedings, etc. Neither the daily nor the weekly would be a *newspaper,* within the terms of the statute, until the statute is satisfied. If compliance with the statute makes either one a *newspaper,* then compliance with the requirements of the statute, applicable to each, must make both, *newspapers.*

Furthermore, an examination of the above quoted record discloses that the Weekly Star-Mirror and the Daily Star-Mirror treated each other as separate newspapers, and that

the board treated them as separate newspapers, in this: That the board *designated* the *Weekly Star-Mirror* as the *official paper* of Latah County, not the Daily Star-Mirror; that the board *awarded* the *publication* of its proceedings to the *Weekly Star-Mirror,* not to the Daily Star-Mirror; that the Daily Star-Mirror promised to publish the proceedings in consideration that the *other newspaper,* to wit, the Weekly Star-Mirror, be so designated the official paper of the county and awarded the printing.

We conclude that the Weekly Star-Mirror and the Daily Star-Mirror are, under chapter 1, title 58, *supra,* as amended, two separate newspapers, and, having reached that conclusion, we deem it unnecessary to review cases cited from other jurisdictions defining the term "newspaper."

A determination of the second question depends upon the construction of section 30–725, I. C. A., which reads as follows:

"Publication of Proceedings.—To cause to be published monthly such brief statement as will clearly give notice to the public of all its acts and proceedings, and, semiannually, a statement of the financial conditions of the county. Such statement as well as all other public notices of proceedings of, or to be had before the board, not otherwise specially provided for, must be published in one issue of such newspaper printed and published in the county as will be most likely to give notice thereof; and when no newspaper is published in the county, copies of such statement must be kept posted for at least twenty days in three public places in the county, one being in a conspicuous place at the court-house door."

That section expressly provides that commissioners' proceedings "must be published in one issue of such newspaper printed and published in the county *as will be most likely to give notice thereof.*" (Emphasis mine.) It seems clear that the legislature intended where, for example, there are two newspapers published in a county, that commissioners' proceedings be published in the one "most likely to give notice thereof." And it is evident that the legislature made *effective notice* the controlling consideration. (See *Lam-*

*phere v. Latah County,* 51 Ida. 65, 2 Pac. (2d) 317.) The actual circulation of a newspaper, therefore, becomes an important element of the "notice" the statute requires. On the question of circulation, the District Court found that the News-Review had a circulation of approximately 1,459 copies; that the Daily Star-Mirror had a circulation of approximately 1,585 copies; that the Weekly Star-Mirror had a circulation of approximately 865 copies, and that the two last-named papers had a total or combined circulation of 2,450 copies. While, as just stated, the actual circulation of a newspaper is an important element of "notice," it is not decisive. There are other elements which may be taken into consideration. For example: Suppose that one paper, "A", has an actual circulation of 2,000 copies generally distributed throughout the various precincts of the county, and that its competitor, "B", has an actual circulation of 2,500 copies confined largely to a single town; or that "B" is a sectarian paper—its subscribers for the most part being members of a particular sect, residing in a single locality; or that most of "B's" subscribers belong to a particular nationality. Under these circumstances, a board may, in the exercise of sound discretion, vested in it by the statute, award county printing to "A", even though its circulation, numerically, is not as large as "B's." Otherwise, the very purpose of the statute might be defeated. However, where there is a controversy between two newspapers as to which one would most likely give effective notice, the circulation of the particular newspaper to which the board makes its award, or with which it contracts, and the circulation of the newspaper contesting the award, are the only circulations which can be considered. The circulation of two separate newspapers cannot be combined under section 30–725, *supra* (as was done in the case at bar), in that, first, it is required that proceedings "must be published . . . . in such *newspaper* . . . . as will be most likely to give notice thereof." (Emphasis mine.) The legislature used the common noun, *newspaper,* in the *singular* number and not in the plural; consequently, the statute requires that publication of the proceedings be awarded to but *one* newspaper

and not to two (or more) newspapers. Secondly, as the record of the board clearly shows, the Daily Star-Mirror is not an *actual party* to the award of the board, or contract with the board, for the publication of the proceedings, and the so-called "agreement" of that daily newspaper to publish the proceedings, in consideration that the board award publication of proceedings to the other newspaper, to wit, the Weekly Star-Mirror, could not have the effect of making it an actual party to the award, because that would be contrary to the express provision of the statute, which provides that the award shall be made to one newspaper.

Order dismissing appeal reversed, and the cause remanded for further proceedings in harmony with this opinion. Costs awarded to appellant.

Budge and Ailshie, JJ., concur.

Givens, C. J., dissents.

Morgan, J., deeming himself to be disqualified, did not sit with the court nor participate in the decision.